UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA M. SCOTT,                              Case No.: 19-12676
     Plaintiff,
v.                                           Marianne O. Battani
                                             United States District Judge
NANDAN PATEL, *et al.*,
     Defendants.                          Michael J. Hluchaniuk
_____/                 United States Magistrate Judge

**REPORT AND RECOMMENDATION:**
**MOTIONS TO DISMISS (ECF Nos. 11, 12, 14, 38), MOTION FOR**
**DEFAULT JUDGMENT (ECF No. 43), MOTION TO SET ASIDE ENTRY**
**OF DEFAULT (ECF No. 45), MOTIONS FOR INJUNCTIVE RELIEF (ECF**
**Nos. 5, 62)**

## I.    PROCEDURAL HISTORY

Plaintiff Laura M. Scott, acting *pro se*, filed a complaint and a motion for

injunctive relief in September 2019.  (ECF No. 1, 5).   All nine defendants have

filed motions to dismiss.  (ECF Nos. 11, 12, 14, 38).  Scott has filed a motion to

strike (ECF No. 17), motions for entry of default and for default judgment (ECF

Nos. 41-43), another motion for injunctive relief (ECF No. 62), a motion for

judicial notice of another Hamtramck case (ECF No. 68), a motion to update the

Court (ECF No. 70), a motion for the Court to take notice of alleged factual

contradictions in defendants' exhibits (ECF No. 74), as well as other motions (ECF

Nos. 76, 77, 81, 82).  Defendant Angerer filed a motion to set aside entry of

default.  (ECF No. 45).  The matter was referred to the undersigned for all pretrial matters.  (ECF No. 44).

## II.    BACKGROUND - PLAINTIFF'S COMPLAINT

Scott filed her complaint along with a number of exhibits.  The complaint centers on actions taken by the defendants in regard to the tax foreclosure of property located at 2968 Hanley, Hamtramck, Michigan ("Hanley property").  She claims that the foreclosure is invalid because there were prior foreclosure proceedings and because the bankruptcy court, during her bankruptcy proceedings, stayed any foreclosure.  Scott refers to bankruptcy proceedings that began sometime in 2016 and that ended in a bankruptcy discharge May 31, 2017.

Specifically, Scott alleges that there was a "hidden foreclosure" on the property in March 2017 by Wayne County.  She was unaware that the foreclosure had taken place, but asserts that the foreclosure became a judicial fact and that a second foreclosure in 2019 was barred by *res judicata*.  (ECF No. 1, ¶¶ 53, 54, 56).  This "judicial fact" appears to be a statement by defendant Kilpatrick in bankruptcy court on August 7, 2017 that the foreclosure took place in March 2017.  (ECF No. 1, PageID.125).  She contends that sometime after the 2017 foreclosure, someone altered a "CD-ROM" containing foreclosure schedules and records to make it look like the foreclosure did not happen in March 2017.  "New" tax

foreclosure proceedings were later initiated against the property, culminating in foreclosure in 2019.  (¶ 56).

However, according to Scott, there should have been no foreclosure at all because there is (or was) a bankruptcy court order which precludes foreclosure. She neither attaches nor describes this order.  She says, "[t]he absence of the *writ of error* by the county defendants to correct the flouting of the bankruptcy court ordered stay . . ." warrants declaratory relief, presumably a declaration that the foreclosure is void.  (ECF No. 1, ¶ 36, emphasis in original).

Thus, in light of the stay on foreclosure by the bankruptcy court, the state foreclosure action and/or property transfers following the action are void and there should have been a "writ of error" entered voiding the foreclosure.  (¶ 42-43).  This "writ of error" statement appears to come from Michigan law.  She cites "MCL § 211 and its subsections" as providing this writ of error.  (¶ 43).  Scott clarifies this allegation in her motion for injunctive relief.  (ECF No. 5).  In this motion, Scott essentially restates the allegations in the complaint, but with a few added facts. Relevant to the foreclosure and writ of error allegation, she cites M.C.L. § 211.78k(9)(f) which provides for a writ of error when a judgment of foreclosure is entered in violation of an order issued by a United States Bankruptcy Court.  (ECF No. 5, PageID.144).  Turning back to the complaint, it appears that she believes that there should have been a writ of error entered to preclude or undo foreclosure

3

of the property because the bankruptcy court entered an order that would preclude foreclosure.

Scott alleges that defendant attorneys Kilpatrick and Yun violated her due process rights during the bankruptcy and foreclosure proceedings. Kilpatrick was the attorney for the Wayne County Treasurer (defendant Sabree in this case) in bankruptcy proceedings. (ECF No. 1, ¶ 6). Yun represented the Wayne County Treasurer in the state court foreclosure proceedings. (¶ 5). The basis of the due process claim against these defendants is not entirely clear. She claims that Kilpatrick contradicted what Yun was saying in state court, but she did not give specifics. (¶ 16). She says that Kilpatrick prevented her from getting relief in bankruptcy court on August 7, 2017 because he "misdirect[ed] the judge to falsities and irrelevant information as if the property" was in Detroit,[1] and incorrectly stated that she still owed money after the March 2017 foreclosure. (¶ 54). This appears to be related to her assertion that Kilpatrick told the bankruptcy judge that the property was foreclosed upon in March 2017.   (ECF No. 1, PageID.125). The contradiction she asserts appears to be that, while in August 2017 Kilpatrick said the foreclosure took place in 2017, Yun, in the state foreclosure proceeding, said the foreclosure would not go forward because of the bankruptcy matter. She was not able to appeal the 2017 foreclosure because she was told there would be no

---

[1] It is not clear what Scott is trying to convey here.

foreclosure.  (*Id.*).  Scott further alleges that Yun posed as a court employee the night before a state court foreclosure hearing and dissuaded her from being heard by the judge.  Scott also says Yun asked for adjournments which "ultimately led to a material fact contradiction between herself" and Kilpatrick.  (¶ 5).  She contends that at the 2017 and later foreclosure hearings, Yun acted as an officer of the court, obligated to tell the truth or to correct any errors once know.  (¶ 23).  Scott alleges that Yun demanded payment in the Spring of 2019 to "block appeal [sic] in state court using both Michigan law jurisdiction and court rules to do so."  (¶ 55).  Scott insists that Yun was obligated to submit a writ of error to prevent or undo the foreclosure in 2019 because of the bankruptcy order staying or precluding foreclosure.  (¶ 56).

As to defendants Patel and his company, Enterprising Real Estate, LLC, Scott essentially alleges trespass and wrongful eviction.  According to Scott, on August 29, 2019, defendant Patel's employee, Felton Adams, broke into her home—the Hanley property.  Adams did not have the correct lock box code from Patel, so he had to break the screen on the door to enter the home.  Patel told Adams that he was going to evict Scott.  (¶ 26).  Adams spoke to Scott on her neighbor's phone after leaving the property.  Adams explained that Patel was "related to" defendant City of Hamtramck's sale of the property to Patel.  (¶ 28).  Scott filed a police report regarding the break-in.  (¶ 30).  She researched Patel and

his company and learned that he was involved in prior litigation. The plaintiffs in that prior case alleged that he or his employees would enter upon foreclosed property and begin to make alterations before title to those properties had passed to him. (¶ 31; Exhibit 2.1, PageID.34-35). This case is the same, or similar, she says. Scott alleges that Patel did not have legal title to the property since there was no valid foreclosure. (¶ 40). She says there were no eviction proceedings and no notice of eviction sent to her to alert her that the defendants would enter the property. She therefore seeks an injunction preventing the defendants from doing anything at all to the property until this case is resolved. (¶ 35). It seems she also would like to have legal title vested in her name, if it is not already in her name.

The allegations against the remaining defendants are less elaborate. Scott alleges that the City of Hamtramck, defendant Angerer (Hamtramck City Manager) and Wayne County are connected to defendant Patel and the Hanley property. (¶ 2-3). She alleges that the Wayne County Land Bank Corporation ("Land Bank") coordinates Wayne County's foreclosed properties. Further, Wayne County granted a deed to the Lank Bank that the Land Bank then granted to the City of Hamtramck. (¶ 4). Hamtramck then sold the Hanley property to Patel. (¶ 28). And, Hamtramck paid the property taxes on the Hanley property since the summer of 2019 without Scott's knowledge. (¶ 41).

## III.   ENTRY OF DEFAULT

On October 29, 2019, the Clerk of the Court entered a default against defendant Angerer for failure to plead or otherwise defend. (ECF No. 29). On November 5, 2019, Angerer filed the instant motion to set aside entry of default. (ECF No. 45). Federal Rule of Civil Procedure 55 provides that courts "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In evaluating whether the movant has sufficiently established good cause, the Sixth Circuit instructs that courts must consider whether "(1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 844 (6th Cir. 1983) (citations omitted).

In the view of the undersigned, the entry of default should be set aside. It appears that the default was inadvertent, rather than willful. Angerer explains that the summons and complaint for Angerer were delivered on October 3, 2019. The City of Hamtramck, for whom Angerer works as City Manager, was served with its summons and complaint on October 10, 2019. (ECF No. 45, PageID.729-30; ECF Nos. 18, 21). Counsel for both defendants logged receipt of the summons and complaint for both defendants as October 10th. Calendaring for a response was based on that error, making Angerer's response late. (ECF No. 45, at PageID.730). Scott has provided no reason to question that this error—causing Angerer's

response to the complaint to be late—was inadvertent, not willful.  (*See* ECF No.

49).

Scott insists that setting aside the entry of default would prejudice her

because it would delay judgment in this case.  (ECF No. 49, PageID.776-77, 780).

The Sixth Circuit has stated, however, that "delay alone is not a sufficient basis for

establishing prejudice." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842

(6th Cir. 2011) (quoting *INVST Fin. Group, Inc. v. Chem-Nuclear Systems, Inc.,*

815 F.2d 391, 398 (6th Cir. 1987) (internal quotation marks omitted).  Instead, "it

must be shown that delay will result in the loss of evidence, create increased

difficulties of discovery, or provide greater opportunity for fraud and collusion."

*Id.*  Scott has made no such showing here, and there is no reason to believe

evidence would be lost, that discovery would become difficult, or that there would

be an opportunity for fraud and collusion if the entry of default were set

aside.   The relevant inquiry here concerns the future prejudice that will result from

setting aside the default, not prejudice that has already resulted from the

defendant's conduct.  *Id.* (citing *Berthelsen v. Kane*, 907 F.2d 617, 620-21 (6th Cir.

1990)).   It does not appear there is any threat of future prejudice to Scott by setting

aside the entry of default against Angerer.

Finally, Angerer has a meritorious defense to this case.  Angerer cites the

arguments raised in hers and the City of Hamtramck's motion to dismiss.  They

argue that this Court lacks subject matter jurisdiction of the claims in this case under the *Rooker-Feldman* doctrine and the failure to state a claim against Angerer.  (ECF No. 45, PageID.736).  As discussed below, these arguments have merit and this Court lacks subject matter jurisdiction over many of the claims in this case, and those that would perhaps implicate Angerer.

Accordingly, though Angerer's response to the complaint was late, the motion to set aside entry of default (ECF No. 45) should be granted.  In light of this conclusion, the undersigned further recommends denying Scott's motion for default judgment against Angerer.  (ECF No. 43).  *See Corsetti v. Hackel*, 2011 WL 2135184, *1 (E.D. Mich. 2011) (citing 10A Charles A. Wright, Arthur Miller, & Mary Kay Kane, Federal Practice & Procedure § 2682 ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).")).

## IV.   MOTIONS TO DISMISS

### A.   Standard of Review

#### 1.   Rule 12(b)(1) Motion to Dismiss

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  Further, a district court may "resolve factual disputes when necessary to resolve challenges to subject

matter jurisdiction." *Id.* Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Ritchie*, 15 F.3d at 598. In matters regarding subject matter jurisdiction, the court may look to evidence outside the pleadings. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

### 2. Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).  In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  Thus, when

applying *Twombly*, except as to a claim of fraud, the Court must still read

plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519

(1972), and accept plaintiff's allegations as true, unless they are clearly irrational

or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551

U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal

pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the

*pro se* complaint at issue.).

      B.    <u>Subject Matter Jurisdiction</u>

          1.    *Rooker-Feldman* Doctrine

Defendants raised the *Rooker-Feldman* doctrine as a basis to dismiss the

complaint. The *Rooker-Feldman* doctrine reflects the statutory provisions of 28

U.S.C. § 1257(a) which provides that review of state court judgments lies in the

Supreme Court, rather than federal district courts. The doctrine applies to "state-

court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court review

and rejection of those judgments. *Rooker-Feldman* does not otherwise override or

supplant preclusion doctrine or augment the circumscribed doctrines that allow

federal courts to stay or dismiss proceedings in deference to state-court actions."

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "Nor

does [*Rooker-Feldman*] stop a district court from exercising subject matter

jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal court plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which it was a party …, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (quoting *GASH v. Vill. Of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) (ellipses in original)).

In applying *Rooker-Feldman*, the appropriate "inquiry … is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then *Rooker-Feldman* would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim" and *Rooker-Feldman* does not bar the claim in federal court. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).  In determining the applicability of the *Rooker–Feldman* doctrine, federal courts "cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint," but instead "must pay close attention to the *relief* sought by the federal-court plaintiff." *Bianchi v. Rylaarsdam,* 334 F.3d 895, 900 (9th Cir. 2003) (emphasis in original); *Berry v. Schmitt,* 688 F.3d 290, 299 (6th Cir. 2012).  Where the plaintiff seeks injunctive and declaratory relief prohibiting the future application of a statute, and

not to overturn the state court's judgment under that statute, *Rooker-Feldman* does not apply.  *Hood v. Keller*, 341 F.3d 593, 598 (6th Cir. 2003).  However, where the plaintiff seeks to overturn the state court rulings, and not just a declaration that the applicable state law is unconstitutional, *Rooker-Feldman* applies.

In her response briefs, Scott argues that this Court has subject matter jurisdiction over this case under *Knick v. Township of Scott*.  (*See, e.g.,* ECF No. 51, PageID.823).  In *Knick*, 139. S. Ct. 2162 (2019), the Supreme Court held that a Fifth Amendment Takings Clause claim is ripe for review in federal court as soon as the government takes property for public use without just compensation.  *Id.* at 2170.  The plaintiff no longer need ripen her claims in state court first.  *Id.*  *Knick* is inapposite here.  This case is not a takings case, though Scott cites the Fifth Amendment at the top of her complaint.  Scott never alleges that the government took the Hanley property for public use without just compensation.  Rather, this case is about the state tax foreclosure and her belief that the foreclosure is invalid because of a bankruptcy court order and under the principle of *res judicata*.

*Rooker-Feldman* applies in this case, at least as to some of the claims.  The source of some of Scott's injuries is the state court judgment of foreclosure.  She believes the foreclosure is invalid because of a bankruptcy court-issued stay on foreclosure and because there was an alleged stay on the foreclosure on the property in 2017 before the judgment of foreclosure issued in 2019.  She requests

an injunction on any actions by the defendants regarding the subject property, and declaratory relief.  In effect, she seeks to nullify or enjoin execution of the state court judgment of foreclosure.  To enjoin execution of the judgment of foreclosure (i.e. actions by defendants with regard to the property) would require the Court to reverse a state court decision.  "This is precisely the type of federal district court action prohibited by the *Rooker-Feldman* doctrine."  *United Methodist Union of Greater Detroit v. Highland Park*, 2016 WL 7634483, at *5 (E.D. Mich. Dec. 2, 2016), *adopted at* 2017 WL 24810 (E.D. Mich. Jan. 3, 2017); *Edwards v. Meisner*, 2019 WL 78890, at *6-7 (E.D. Mich. Jan. 2, 2019).[2]  And, to the extent Scott seeks "federal reversal of the state-court Judgment of Foreclosure, dismissal of this matter under the *Rooker-Feldman* doctrine is appropriate."  *United Methodist*, 2016 WL 7634483, at *5 (citation omitted).

However, the claims regarding wrongful eviction or trespass against Patel and his company, and violation of due process for convincing her to not state her case in state court and for contradictions made in the bankruptcy and foreclosure courts are independent claims not barred by *Rooker-Feldman*.  The due process

---

[2] The *Edwards* case had two state court judgments to consider, one for foreclosure and a second judgment for eviction. The present case does not include an eviction judgment but that does not change the application of *Rooker-Feldman* to the facts of this case because the relief requested necessarily reaches the foreclosure judgment even if there was no eviction judgment.

claims, however, are barred by the TIA as explained below. The wrongful eviction and trespass claims are state-law claims that are also addressed below.

> 2. Tax Injunction Act and Principles of Comity

Even if the *Rooker-Feldman* doctrine did not bar Scott's claims, the Tax Injunction Act (TIA), 28 U.S.C. § 1341, does bar many of her claims. The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "The TIA creates a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority." *Pegross v. Oakland Cnty. Treasurer,* 592 Fed. App'x 380, 384 (6th Cir. 2014) (citing *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 522 (1981) (stating that the TIA "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes")); *California v. Grace Brethren Church,* 457 U.S. 393, 396 (1982) (holding that the TIA "deprived the District Court of jurisdiction to hear" a First Amendment challenge to state and federal taxation regimes, and extending TIA's prohibition on injunctive relief to declaratory judgments); *Colonial Pipeline Co. v. Morgan,* 474 F.3d 211, 218 (6th Cir. 2007) (quoting *Grace Brethren* and stating that "a district court does not have jurisdiction over state and local tax

matters where a 'plain, speedy and efficient remedy' is available in state court").

"The principle of comity bars federal courts from granting damages relief in [state tax] cases." *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 107 (1981).

An important limitation is that the Tax Injunction Act and the principle of comity only bar plaintiff's claims if there exists a state remedy that is "plain, adequate, and complete," or, as the cases developing the common-law principle of comity have required, "plain, speedy, and efficient." *See id.* at 116, n. 8.   The Supreme Court and the Sixth Circuit have found no functional difference between those two phrases.  *Id.*; *see also In re Gillis*, 836 F.2d 1001, 1010 n. 7 (6th Cir. 1988).  State "remedies are plain, adequate, and complete if they provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any … objections to the tax." *Gillis*, 836 F.2d at 1010.  "A number of courts have squarely faced the issue of whether a 'plain, speedy and efficient remedy' which has been allowed to lapse satisfies the Tax Injunction Act. These courts have unanimously concluded that failure to utilize a remedy does not render that remedy insufficient under § 1341." *Rafaeli, LLC v. Wayne Cty.*, 2015 WL 3522546, at *5 (E.D. Mich. June 4, 2015) (quoting *Wenz v. Rossford Ohio Transp. Improvement Dist.,* 392 F. Supp. 2d 931, 936–37 (N.D. Ohio 2005)).

As explained above, it appears that Scott is alleging that the bankruptcy court stayed any foreclosure and voided any past due amounts.  She also alleges that a foreclosure took place in 2017 that she did not have notice of, and so the 2019 foreclosure is invalid because of the bankruptcy stay and because the county foreclosed (or tried to foreclose) already in 2017.  She also claims, in an unspecified manner, that defendant Yun, who was attorney for Wayne County Treasurer in the state tax proceedings, convinced her not to be heard in state court and thwarted her appeal of the matter, though she did file an appeal.  Relatedly, she accuses Yun and Kilpatrick of contradicting each other in state and bankruptcy court, respectively, regarding whether there was a foreclosure in 2017.

In her complaint and motions for temporary restraining order and preliminary injunction (ECF Nos. 5, 62), Scott seeks an injunction stopping any actions by the defendants with respect to the Hanley property.  (ECF No. 1, PageID.6-7, ¶15).  This request is about the property transfers that took place after the 2019 tax foreclosure[3] on the property—the foreclosure that Scott contends was invalid—and about Patel's sending an employee to the property to enter the house,

---

[3] Scott does not state in her complaint that the foreclosure was a state tax foreclosure. However, it is clear from the complaint that the foreclosure was not a mortgage foreclosure as there are no allegations that would implicate a private foreclosure proceeding.  And, Scott names and discusses the involvement of defendant Wayne County Treasurer, who would be involved in a tax foreclosure.  Further, both the defendants and plaintiff each refer to the foreclosure as a tax foreclosure in the briefing after the complaint.

though according to Scott, Patel does not have legal title to the property. Scott also seeks to have this Court void the Hanley property foreclosure.

While couched in different claims or allegations, it is clear that Scott's complaint is focused on the state tax foreclosure procedure. Most of her claims, in one way or another, seek to invalidate the tax foreclosure process so as to vest legal title in her name and prevent the defendants from taking action on the property. Taking her claims as true, Scott's challenges directly target the way Wayne County has "collected" delinquent property taxes, and thus falls squarely within the jurisdictional limitation imposed by the TIA.

Numerous Courts in this district have held that the TIA bars a challenge to the collection of state taxes through foreclosure. For example, in *Hammoud v. County of Wayne*, 2016 WL 4560635 (E.D. Mich. 2016), *aff'd* 697 Fed. App'x 445 (6th Cir. 2017), Judge Levy, contrary to the plaintiff's argument,[4] determined that the constitutional claims and some of the state statutory claims sought to "set aside the judgments of foreclosure, vest title back in plaintiffs' names, and permit plaintiffs to pay the back taxes owed" and therefore that relief "would certainly 'enjoin, suspend or restrain the assessment, levy or collection of a [ ] tax under

---

[4] Scott insists that her case is just like *Hammoud* and that she should be granted relief like the plaintiffs in that case. (ECF No. 1, PageID.8, 12 at ¶ 29) (citing ECF No. 1, Exhibit 2.2 (news article about the lawsuit) and Exhibit 3 (list of cases including Enterprising Real Estate, of which *Hammoud* is listed)). But, as discussed here, *Hammoud* was dismissed for lack of subject matter jurisdiction under the TIA.

State law'" thus triggering the prohibitions of the TIA and requiring the dismissal of those claims. *Id*. at 4. The plaintiffs in that case argued, among other things, that the defendants did not give them notice of tax delinquencies, and that they were denied a meaningful opportunity to be heard; they sought injunctive relief voiding the foreclosure. *Id.* at *2. Thus, the plaintiffs were asking the Court to set aside the judgments of foreclosure. *Id.* at *4. To grant this relief, the Court would have had to "enjoin, suspend or restrain the assessment, levy or collection of a[] tax under State law." *Id.* (quoting *Pegross v. Oakland Cty. Treasurer*, 592 Fed. Appx. 380, 384-85 (6th Cir. 2014)).

The Court went on to consider whether the plaintiffs had a plain, speedy, and efficient remedy in state courts for their claims. The Court concluded that the plaintiffs had such an adequate remedy in state court for their claims, which are similar to Scott's claims in this case. *Id.* at *5. Other courts have similarly concluded that there exists a plain, speedy, and efficient remedy in state court for tax foreclosure claims such as Scott's. *See, e.g., Edwards v. Meisner*, 2019 WL 78890 (E.D. Mich. Jan. 2, 2019) (Finding adequate state remedy for plaintiff's claims that the tax foreclosure was improper and that his due process rights were violated because he was deprived a meaningful opportunity to be heard); *Rafaeli, LLC*, 2015 WL 3522546 (finding adequate remedy in state courts for plaintiff's procedural due process and equal protection claims, among others).

Scott's due process claims are also barred by the TIA, as they were barred in *Hammoud*, *supra*. Again, she claims are that she did not have notice of foreclosure proceedings in 2017 and that Yun convinced her to not be heard in the 2019 state court foreclosure proceedings and in some way interfered with her appeal. Whether there is a judgment of foreclosure from 2017, or whether the state only conducted some proceedings but did not reach judgment in 2017, is not clear. Either way, Scott claims she did not have any notice of foreclosure proceedings in 2017. Her claims are procedural due process claims.

In a recent case from this Court, *Edwards v. Meisner*, 2019 WL 78890 (E.D. Mich. Jan. 2, 2019), the Court addressed a claim similar to Scott's claim. In that case, the plaintiff alleged that the Oakland County Treasurer and the City of Southfield conspired to deprive him of a meaningful opportunity to heard prior to transferring his property and that he was not given notice of tax delinquency. After discussing the principles of comity and the TIA, the Court concluded that it was barred from exercising jurisdiction over the claim. *Id.* at *9. Similarly, in *Rafaeli, LLC v. Wayne County*, 2015 WL 3522546 (E.D. Mich. June 4, 2015), the plaintiff alleged that Oakland County did not give proper notice of the foreclosure proceedings. Though the plaintiff had likely stated a cognizable Due Process violation, the Court dismissed the case (which included other claims) under the TIA because the challenge to the foreclosure, i.e. lack of proper notice, was a

direct challenge to the way Oakland County "collected" delinquent property taxes.

Thus, the claim fell within the jurisdictional limitation imposed by the TIA.  *Id.* at

*6.  And, as stated above, the plaintiffs in *Hammoud* argued that they did not

receive notice of tax delinquencies and did not have a meaningful opportunity to be

heard in foreclosure proceedings.  Those claims were barred by the TIA.  2016 WL

4560635, at *2, 4; *see also Dixon v. Oisten*, 62 Fed. App'x 105, 105 (6th Cir.

2003) (holding the TIA barred a claim challenging the manner in which the

tax foreclosure was carried out where the plaintiff claimed the foreclosure was

without due process); *Johnson v. Mich. Dep't of Treasury*,  2000 WL 571916, at *2

(6th Cir. May 4, 2000) (holding the TIA barred plaintiff's claim that he was denied

due process because he did not receive notice of the tax foreclosure on his home).

State court remedies are (or were) available to Scott, including seeking

injunctive relief and filing a claim for monetary damages in Michigan's Court of

Claims.  *Id.*  Michigan's General Property Tax Act (GPTA), the Act under which

the Hanley property foreclosure must have been brought, provides:

> (1) If a judgment for foreclosure is entered ... and all
> existing recorded and unrecorded interests in a parcel of
> property are extinguished ..., the owner of any
> extinguished recorded or unrecorded interest in that
> property who claims that he or she did not receive
> any notice required under this act shall not bring an
> action for possession of the property against any
> subsequent owner, but may only bring an action to
> recover monetary damages as provided in this section.

> (2) The court of claims has original and exclusive jurisdiction in any action to recover monetary damages under this section.
>
> (3) An action to recover monetary damages under this section shall not be brought more than 2 years after a judgment for foreclosure....

Mich. Comp. Laws § 211.78l.

Further, Scott could have pursued her due process claims in the Wayne County Circuit Court and attempt to overturn the tax sale and restore her title to the Hanley property.  *See id.* at *7; *see also In re Treasurer of Wayne Cnty. for Foreclosure,* 478 Mich. 1, 11, 732 N.W.2d 458 (2007) (holding that the provision of the GPTA depriving state circuit courts of jurisdiction to alter judgment of foreclosure for delinquent taxes, if the property owner did not redeem the property or appeal the judgment of foreclosure within 21 days, violated due process as applied to property owners who did not receive constitutionally adequate notice of the foreclosure proceedings).

It appears that Scott did attempt to appeal the 2019 judgment of foreclosure. Defendants attached the Michigan Court of Appeals order dismissing her appeal.[5]

---

[5] A court may take notice of other court proceedings without converting a motion to dismiss into a motion for summary judgment. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).  And, since Scott mentioned appealing the judgment of foreclosure in her complaint, a document from that appeal may be considered at this stage.  The Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

The appeal was dismissed for failure to comply with Michigan Court Rules

7.201(B)(3) and 7.216(A)(10).[6]  (ECF No. 11-11, PageID.290).  According to the

court document, the Clerk provided notice of the defect but the defect was not

corrected in a timely manner.  In this instance, the defect was that Scott did not

provide proof that the amount due to the Wayne County Treasurer under the

judgment of foreclosure had been paid.  The dismissal was "without prejudice to

whatever other relief may be available consistent with the Court Rules." (*Id.*).  She

apparently did not appeal the Court of Appeals determination to the Michigan

Supreme Court.  As noted above, the failure to utilize a state court remedy or

losing an appeal does not render that remedy inefficient under § 1341.  *See, e.g.*,

*Haskett v. Athens Cty.*, 2013 WL 1154466, at *5 (S.D. Ohio Mar. 19, 2013)

("Simply because Plaintiffs have not availed themselves of a remedy or because

they have received an adverse determination, however, does not make the remedy

insufficiently plain, speedy, or efficient under the TIA or Sixth Circuit

precedent.").

In her motion for preliminary injunction, Scott suggests that the bankruptcy

exception to the TIA applies in this case.  (ECF No. 5, PageID.137) (citing *In re*

---

[6] This document does not include the parties' names.  However, Scott does not contest that this order of dismissal was regarding her appeal from the judgment of foreclosure, and there is no reason the question the authenticity of the document or that Scott is the subject of the document.

*Pontes*, 310 F. Supp. 2d 447 (D.R.I. 2004)).  It does not.  Title 11 U.S.C. §

505(a)(1) of the Bankruptcy Code "modifies [the TIA] by granting bankruptcy

courts jurisdiction to determine the amount and legality of certain taxes, subject to

the limitations in § 505(a)(2)."  *In re Shefa, LLC*, 524 B.R. 717, 733 (Bankr. E.D.

Mich.), *aff'd*, 535 B.R. 165 (E.D. Mich. 2015).  Under § 505(a)(2), the bankruptcy

court may not determine "the amount or legality of any amount arising in

connection with an ad valorem tax on real or personal property of the estate, if the

applicable period for contesting or redetermining that amount under applicable

nonbankruptcy law has expired." 11 U.S.C. § 505(a)(2)(C).

This Court is not a bankruptcy court.  This Court is not tasked with

determining the amount and legality of any taxes.  Scott brought her case in this

Court asking the Court to enjoin the defendants from taking any action on state tax

foreclosed property and giving her full possession of the property.  The TIA,

however, prevents this Court from granting such relief.

Because a plain, adequate, and complete remedy is available in the state

courts, this action is not appropriately before this Court, and should be dismissed

without prejudice for want of subject matter jurisdiction.   The motions for

injunctive relief (ECF Nos. 5, 62), should be denied as moot in light of this

recommendation.

C.    Supplemental Jurisdiction

As discussed above, the Court has subject matter jurisdiction over Scott's claims against Patel and his company for what can be characterized as wrongful eviction, to the extent these claims remain.  The Court has subject matter jurisdiction over these claims because the tax collection was complete at the time the property was foreclosed upon and then sold (precluding application of the TIA), *Hammoud*, 2016 WL 4560635, at *4, and these claims are independent of the judgment of foreclosure (precluding application of the *Rooker-Feldman* doctrine).[7]  But, these are state law claims.  Scott does not cite federal law as providing protection from wrongful eviction and trespass.  Even if she had attempted to bring these claims through 42 U.S.C. § 1983, the claims would be meritless because she did not allege that Patel and his company were state actors, acting under color of law.  *See Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (To state a claim for relief under § 1983, "a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was committed by a person acting under color of state law.").  Instead, she alleges that Patel purchased the Hanley property from the City of Hamtramck after the tax foreclosure.  Then, Patel sent an employee to go into the house on August 29,

---

[7] In other words, granting relief for wrongful eviction or trespass would not require the Court to overturn the foreclosure, even though the Court would have to deny a legal conclusion reached in the foreclosure proceedings.

2019.  It is not clear that purchasing foreclosed property from a city converts the private buyer into a state actor.

In light of the recommendation to dismiss the federal claims, the undersigned suggests declining to exercise supplemental jurisdiction on these state law claims.  Under 28 U.S.C. § 1367, a district judge may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction. . . ."  28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims [.]" *Musson Theatrical, Inc. v. Express Corp*., 89 F.3d 1244, 1254–55 (6th Cir. 1996); *see also Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2010) ("As [plaintiff's] one federal claim was properly dismissed, it was likewise proper for the district court to decline to exercise supplemental jurisdiction over the remaining state law claims."); *Ketola v. Clearwater*, 2008 U.S. Dist. LEXIS 104205, at *13-14, 2008 WL 4820499 (W.D. Mich. Oct. 31, 2008) ("Where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits.").

D.     Failure to State a Claim

Defendants also seek to have the complaint dismissed due to the plaintiff's failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). In light of the undersigned's conclusion that this case should be dismissed in its entirety based on the TIA, principles of comity, the *Rooker-Feldman* doctrine, and declining supplemental jurisdiction over state law claims, it is not necessary to address the defendants' arguments under Rule 12(b)(6).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the motion to set aside entry of default (ECF No. 45) be **GRANTED**.  In light of this conclusion, the undersigned further **RECOMMENDS** that Scott's motion for default judgment against Angerer (ECF No. 43) be **DENIED.**

The undersigned further **RECOMMENDS** that the complaint and motions for injunctive relief (ECF Nos. 5, 62) be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

The undersigned further **RECOMMENDS** that the remaining non-dispositive motions be terminated as moot in light of the above recommendation to dismiss for lack of subject matter jurisdiction.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 9, 2020                    s/Michael J. Hluchaniuk
                                          Michael J. Hluchaniuk
                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

      I certify that on January 9, 2020, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Laura M. Scott, 2968 Hanley, Hamtramck, MI  48212-3508.

                          s/D. Worth
                          Case Manager
                          (810) 341-7881
                          durene_worth@mied.uscourts.gov