UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA M. SCOTT,

    Plaintiff,

v.

NANDAN PATEL, *et al.,*

    Defendants.

_____/

Case No. 19-12676

Hon. Marianne O. Battani

## ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.    **INTRODUCTION**

Before the Court are objections filed by Plaintiff Laura M. Scott (Dkt. 87) to a January 9, 2020 Report and Recommendation ("R & R") issued by Magistrate Judge Michael J. Hluchaniuk (Dkt. 86). In the R & R, the Magistrate Judge recommends that the Court (i) grant in part the motions to dismiss brought by the various defendants named in Plaintiff's complaint, (ii) grant a motion brought by Defendant Kathleen Angerer to set aside a default entered against her, (iii) deny Plaintiff's motion for entry of a default judgment against Defendant Angerer, (iv) deny Plaintiff's motions seeking awards of injunctive relief, (v) dismiss the federal claims asserted by Plaintiff for lack of subject matter jurisdiction, (vi) decline to exercise supplemental jurisdiction over Plaintiff's state-law claims, and (vii) deny as moot the remaining motions brought by Plaintiff.

Plaintiff, who is proceeding without counsel, has put forward 35 purported objections to the R & R.  As discussed below, however, Plaintiff's 47-page submission largely fails to address, much less challenge, the Magistrate Judge's specific reasoning and rulings in the R & R.  Accordingly, for the reasons stated below, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the Magistrate Judge's R & R in its entirety.

II.     STANDARD OF REVIEW

A district court must conduct a *de novo* review of any portion of a magistrate judge's R & R to which a party objects.  28 U.S.C. § 636(b)(1).  The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  *United States v. Shami,* 754 F.2d 670, 672 (6th Cir. 1985).  Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of matters referred to a magistrate judge.  *Flournoy v. Marshall,* 842 F.2d 875, 878 (6th Cir. 1988).

III.    ANALYSIS

Plaintiff's lengthy statement of her objections to the R & R is replete with inapposite and out-of-context legal jargon, references to immaterial aspects of this and other cases, and meaningless discussions of wholly unrelated matters.  In order to make sense of Plaintiff's objections and separate the wheat from the chaff, the Court first

summarizes the Magistrate Judge's rulings in the R & R, and then attempts to discern which of Plaintiff's objections might bear some relationship to these rulings.

In the R &R, the Magistrate Judge initially surveyed the scattershot and rather confusing allegations of Plaintiff's *pro se* complaint, as well as the two dozen exhibits accompanying this pleading. (*See* R & R at 2-6.) Turning next to Defendant Kathleen Angerer's motion to set aside the default entered against her by the court clerk, the Magistrate Judge recommended that this motion be granted, reasoning (i) that the short delay in Defendant Angerer's response to Plaintiff's complaint was the product of inadvertence rather than willfulness, (ii) that Plaintiff was not prejudiced by this modest delay, and (iii) that Defendant Angerer had identified meritorious defenses to the claims asserted against her. (*See id.* at 7-9.)

The Magistrate Judge next addressed the motions to dismiss brought by various subsets of the defendants. The Magistrate Judge recommended that these motions be granted in part, determining on two separate grounds that the Court lacks subject matter jurisdiction over Plaintiff's federal claims. First, the Magistrate Judge found that at least some of Plaintiff's claims run afoul of the *Rooker-Feldman* doctrine, where these claims rest upon allegations of injuries suffered as a result of a state court judgment of foreclosure. (*See id.* at 14-15.) In addition, the Magistrate Judge ruled that Plaintiff's federal claims of due process violations are barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. (*See id.* at 18-25.) Finally, in light of these jurisdictional obstacles to each of Plaintiff's federal claims, the Magistrate Judge recommended that the Court

should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. (*See id.* at 26-27.)

Against this backdrop, the Court turns to Plaintiff's objections to the R & R. In two of these objections, numbers 11 and 26, Plaintiff apparently challenges the Magistrate Judge's recommendation that the default entered against Defendant Angerer should be set aside. Although the grounds for these objections are not clear, it appears that Plaintiff principally complains that both Defendant Angerer and the Defendant City of Hamtramck failed to timely file and serve their responses to Plaintiff's complaint. Yet, the Magistrate Judge recognized as much with regard to Defendant Angerer, but nonetheless found that she had established the requisite "good cause" under Fed. R. Civ. P. 55(c) for setting aside the entry of her default. (*See* R & R at 7-9.) Plaintiff does not even acknowledge the Magistrate Judge's ruling on this point, much less identify any purported defects in the Magistrate Judge's analysis of Defendant Angerer's request to set aside the default entered against her. Having reviewed this analysis and the underlying record, the Court fully concurs in the Magistrate Judge's recommended disposition of Defendant Angerer's motion.

As for the Defendant City, the clerk of the court denied Plaintiff's request for entry of this party's default, explaining that the City had responded to Plaintiff's complaint by filing a motion to dismiss. (*See* Dkt. 40, 11/1/2019 Notice of Denial.) Plaintiff evidently takes issue with this denial, suggesting both (i) that the City filed and served its motion a day after the relevant deadline, and (ii) that its certificate of service was inaccurate in

4

one or more respects.  Even assuming this were so, however, the Magistrate Judge's analysis regarding the entry of Defendant Angerer's default would apply as well to any claim that the court clerk should have entered the City's default.  Most notably, just as the Magistrate Judge concluded that Plaintiff suffered no prejudice as a result of the modest delay in Defendant Angerer's filing and service of her response to Plaintiff's complaint, (*see* R & R at 8), the same is surely true of the City's purported one-day delay in the service and filing of its motion to dismiss.  Accordingly, the Court finds no merit in Plaintiff's objections to the Magistrate Judge's rulings and recommendations regarding (i) Defendant Angerer's motion to set aside the entry of her default, and (ii) Plaintiff's motions for entry of the Defendant City's default and for entry of a default judgment against Defendant Angerer.

Turning next to the Magistrate Judge's analysis and application of the *Rooker-Feldman* doctrine, Plaintiff evidently challenges the Magistrate Judge's rulings on this subject in her ninth and twenty-eighth objections to the R & R.  Again, the grounds for these objections are not clear, but Plaintiff apparently contends that her allegations of legal transgressions in the course of the state court tax foreclosure proceedings should prevent the resulting 2019 state court judgment of foreclosure from triggering the *Rooker-Feldman* doctrine or otherwise having any sort of preclusive effect in the present federal suit.  As observed in the R & R, Plaintiff alleges that one such transgression occurred when the state court allowed the tax foreclosure suit to go forward despite a stay that purportedly was issued in Plaintiff's bankruptcy proceedings.  (*See* R & R at

14.) Yet, Plaintiff surely could have raised this claimed violation of a bankruptcy stay during the state court foreclosure proceedings, and if she was dissatisfied with the state trial court's handling of this issue, she could have pursued the matter before the Michigan appellate courts. In addition, she presumably could have sought relief from the bankruptcy court for any purported violation of a stay imposed by that court.[1]

Alternatively, Plaintiff evidently maintains that the *Rooker-Feldman* doctrine cannot be invoked here in light of a procedural hurdle in Michigan tax foreclosure proceedings

---

[1] For what it is worth, it appears that any bankruptcy stay entered with respect to the property at issue here had been lifted by December of 2017 at the latest, when the bankruptcy court entered an order confirming that this stay was "no longer in effect." *See In re Scott,* No. 16-56880, Dkt. 43, Order at 1 (Bankr. E.D. Mich. Dec. 18, 2017). Thus, nothing in the record indicates that a bankruptcy stay was in place when the state court entered its judgment of foreclosure in March of 2019.

To be sure, Plaintiff contends that an earlier, "hidden" judgment of foreclosure was entered against the property back in 2017. (*See* Dkt. 87, Plaintiff's Objections at 6, 39.) As evidentiary support for this claim, Plaintiff points primarily to a stray remark in a bankruptcy court opinion indicating that her home had been "foreclosed [upon]" at some point prior to August of 2017. (*See* Dkt. 11, Defendants' Motion, Ex. 3, 8/14/2017 Bankruptcy Court Opinion and Order at 1.) This statement, however, can hardly be viewed as a finding of fact by the bankruptcy court, particularly where the court cited no evidentiary basis for this assertion, and where nothing in the bankruptcy court's ruling turned upon the truth of this observation. More importantly — and as demonstrated by a state court transcript that Plaintiff herself has provided in support of her objections to the R & R — although the Wayne County treasurer did, in fact, initiate a tax foreclosure against Plaintiff's property in 2017, this proceeding did not go forward, in light of the "fact that [Plaintiff was] involved in a Chapter 7 Bankruptcy [at the time] and the property [wa]s included in the inventory" disclosed to the bankruptcy court. (*See* Plaintiff's Objections, Ex. A, 3/22/2017 State Court Tr. at 3.)

This state court transcript, then, casts considerable doubt upon Plaintiff's claim of a "hidden" 2017 judgment of foreclosure, and nothing elsewhere in the record supports this assertion. It is important to emphasize, however, that the existence of this purported 2017 judgment has no bearing whatsoever on the Magistrate Judge's rulings in the R & R.

6

that makes it more difficult for indigent litigants such as herself to pursue state court appeals from judgments of foreclosure. Specifically, under the pertinent Michigan statute, an individual who wishes to appeal a judgment of foreclosure must first pay the tax determined to be due under the judgment. *See* Mich. Comp. Laws § 211.78k(7). Plaintiff appears to allege that she lacked the means to make this payment, and her attempt to appeal the judgment of foreclosure evidently was dismissed on this ground. (*See* Dkt. 11, Defendants' Motion, Ex. 10, 5/22/2019 Michigan Court of Appeals Order at 1.) In Plaintiff's view, her lack of a meaningful opportunity to appeal the judgment of foreclosure should preclude the application of the *Rooker-Feldman* doctrine here. (*See* Plaintiff's Objections at 24.)

The Court finds it unnecessary to resolve this issue, however, because it reads the Magistrate Judge's R & R as declining to invoke the *Rooker-Feldman* doctrine with respect to Plaintiff's federal claims of due process violations in the Michigan tax foreclosure proceedings involving the subject property. As explained in the R & R, the *Rooker-Feldman* doctrine does not preclude a plaintiff from pursuing "independent" claims that were not "previously litigated in state court." (R & R at 13.)[2] The Magistrate Judge determined that some, if not all, of Plaintiff's allegations of due process violations

---

[2]The Magistrate Judge aptly observed that although the *Rooker-Feldman* doctrine does not apply to such "independent" claims, principles of preclusion may nonetheless prevent a plaintiff from litigating those claims in federal court if she had the opportunity to do so in a prior state court suit. (*See id.*) The Court need not consider the possible application of these preclusion principles, however, in light of the Magistrate Judge's determination that Plaintiff's federal due process claims are jurisdictionally barred on another ground — namely, by operation of the TIA.

7

give rise to such "independent" claims, (*see id.* at 15), and the Court sees no reason to revisit this analysis, particularly in light of the Magistrate Judge's conclusion that these claims are subject to dismissal on other grounds.

Accordingly, the Court turns to the Magistrate Judge's ruling that Plaintiff's federal due process claims are barred by the TIA.  The bulk of Plaintiff's objections — numbers 1, 3, 4, 7 through 10, 12, 16, 22, 30, 31, and 35 — appear to challenge one or more aspects of this ruling.  Specifically, the Court interprets Plaintiff's objections as raising five challenges to the Magistrate Judge's analysis of the TIA as it applies in this case:  (i) that due process and other constitutional infirmities in Michigan's General Property Tax Act ("GPTA"), Mich. Comp. Laws § 211.1 *et seq.,* and in the 2019 state court tax foreclosure proceedings should defeat the application of the TIA here, (ii) that the case law cited by the Magistrate Judge as demonstrating the applicability of the TIA here is distinguishable on one or more grounds, (iii) that Plaintiff's complaint should be viewed as advancing a takings-related theory that is not barred by the TIA, (iv) that at least some forms of relief sought by Plaintiff likewise are not barred by the TIA, and (v) that certain legal infirmities in the state court's 2019 judgment of foreclosure prevent the TIA from applying in this case.  The Court addresses each of these arguments in turn.

As explained in the R & R, the TIA potentially bars a plaintiff's claims only "if there exists a state remedy that is plain, adequate, and complete."  (R & R at 17 (internal quotation marks and citation omitted).)  In Plaintiff's view, Michigan's GPTA imposes various "blockages" and suffers from due process and other constitutional infirmities that render her state remedies inadequate.  As described earlier, for example, Plaintiff

apparently maintains that a provision of the GPTA, Mich. Comp. Laws § 211.78k(7), violates her right to due process by requiring that she pay the taxes due for the subject property before she may pursue an appeal from a judgment of foreclosure, even if she lacks the financial means to make this payment. She also appears to suggest that the 2019 tax foreclosure proceedings against her property violated her right to due process, and perhaps other constitutionally protected rights, by virtue of (i) the alleged fact that this property already had been subject to a "hidden" judgment of foreclosure back in 2017, and (ii) the existence of bankruptcy proceedings in which the disposition of this property purportedly was at issue.

As ably explained in the R & R, however, Plaintiff's due process and other constitutional challenges to the 2019 state court tax foreclosure proceedings and judgment do not render her state remedies inadequate, nor do they otherwise overcome the "jurisdictional limitation imposed by the TIA." (R & R at 19.) In a number of cases cited by the Magistrate Judge or disclosed in this Court's research, the plaintiffs alleged that they were given inadequate notice of state court foreclosure proceedings or otherwise suffered due process violations or other constitutional deprivations in the course of those proceedings, but the courts held that the plaintiffs' claims nonetheless were barred by the TIA. *See, e.g., Pegross v. Oakland County Treasurer,* No. 13-2453, 592 F. App'x 380, 384-87 (6th Cir. Nov. 18, 2014); *Edwards v. Meisner,* No. 18-13488, 2019 WL 78890, at *7-*12 (E.D. Mich. Jan. 2, 2019); *Hammoud v. County of Wayne,* No. 15-14461, 2016 WL 4560635, at *4-*6 (E.D. Mich. Sept. 1, 2016), *aff'd,* 697 F.

App'x 445 (6th Cir. Aug. 24, 2017); *Everett v. Wahby,* No. 15-11087, 2015 WL 6694032, at *2-*4 (E.D. Mich. Oct. 14, 2015), *adopted at* 2015 WL 6689851 (E.D. Mich. Nov. 3, 2015); *Rafaeli, LLC v. Wayne County,* No. 14-13958, 2015 WL 3522546, at *6-*8 (E.D. Mich. June 4, 2015); *Anderson v. County of Wayne,* No. 10-13708, 2011 WL 2470467, at *6-*7 (E.D. Mich. June 20, 2011).

To be sure, Plaintiff seeks to draw various distinctions between the facts of these other cases and her allegations in this suit, but none of these purported distinctions is material to the outcome recommended by the Magistrate Judge. Most notably, she points to her bankruptcy filing, and suggests that this distinguishes her from the plaintiffs in the above-cited cases. As discussed earlier, however, to the extent that Plaintiff believes that the state court that presided over the tax foreclosure proceedings failed to pay sufficient heed to a bankruptcy court stay or ruling, or that the bankruptcy court should have awarded her some sort of relief from the foreclosure proceedings or the state court's judgment, judicial forums were available to address these arguments. Similarly, to the extent that Plaintiff suggests that the state court would have been unwilling or unable to entertain the specific types of constitutional challenges she has asserted before this Court, the Magistrate Judge pointed to a Michigan Supreme Court ruling that expressly addressed (and accepted) a due process challenge to one aspect of Michigan's process for tax foreclosures. (*See* R & R at 23 (citing *In re Petition by Treasurer of Wayne County for Foreclosure,* 478 Mich. 1, 732 N.W.2d 458, 462-63 (2007)).) Surely, then, the Michigan courts are capable of addressing other types of due

process challenges as well, and Plaintiff has not identified any particular characteristics of her constitutional claims that might lead to a different conclusion. Whether Plaintiff failed to pursue the claims and remedies available to her in the state courts, or whether she did so but was unsuccessful, this does not render her state remedies inadequate for purposes of overcoming the jurisdictional bar of the TIA. *See Hammoud,* 2016 WL 4560635, at *5 (explaining that the application of the TIA "depends on whether a state remedy was at some time available to the taxpayer," and that "the taxpayer's failure to win in state court or to use the remedy properly does not negate the existence of the remedy" (internal quotation marks and citation omitted)); *Rafaeli,* 2015 WL 3522546, at *5 (pointing to the courts' "unanimous[]" recognition that the "failure to utilize a remedy does not render that remedy insufficient under" the TIA (internal quotation marks and citations omitted)).

It is true, as the Magistrate Judge observed, that a Bankruptcy Code provision grants bankruptcy courts the authority to address certain tax-related issues that other federal courts would be barred from considering under the TIA. (*See* R & R at 25.) As the Magistrate Judge correctly pointed out, however, "[t]his Court is not a bankruptcy court," and it therefore cannot invoke the authority conferred under the Bankruptcy Code. (*Id.*) Plaintiff evidently understands as much, given that she apparently has asked the bankruptcy court — as well as another District Judge who is presiding over her bankruptcy appeals — to reopen her bankruptcy proceedings, presumably so that she can pursue claims and remedies similar to those she wishes to pursue here. Any relief

11

that might be available under the Bankruptcy Code must be sought in that forum, and not this one.

Plaintiff next appears to contend that she has advanced a takings claim that lies outside the scope of the TIA's jurisdictional bar. The Magistrate Judge disagreed, stating that this "is not a takings case" and noting that Plaintiff has not alleged the elements of a takings claim. (R & R at 14.) Plaintiff does not identify any purported defects in the Magistrate Judge's analysis on this point, but instead refers vaguely to the Fourth and Fifth Amendment implications of the alleged "invasions" of her property and deprivations of her property interests, apparently proposing that these transgressions should be viewed colloquially as "takings." Having carefully reviewed Plaintiff's complaint and her other submissions, the Court concurs in the Magistrate Judge's conclusion that Plaintiff has failed to plead a viable Fifth Amendment takings claim that could overcome the jurisdictional obstacle of the TIA.

As her next challenge to the Magistrate Judge's application of the TIA, Plaintiff seemingly asserts that the remedies she seeks (or might seek) in this case encompass more than the declaratory and injunctive relief that is barred by the TIA. She notes, for instance, that a portion of the relief she plans to seek in this case is yet to be determined, and depends upon purported violations that might be disclosed in discovery. (*See* Plaintiff's Objections at 28.) She also appears to suggest that she might seek a "writ of error" that the Court could award notwithstanding the TIA.

As explained in the R & R, however, the TIA's jurisdictional prohibition has been held to encompass pleas for injunctive or declaratory relief, and principles of comity

extend this prohibition to claims for damages. (*See* R & R at 16-17.) Thus, it does not matter whether Plaintiff might yet uncover additional purported legal violations that would give rise to new theories of recovery and pleas for relief. Even if so, Plaintiff fails to explain how any additional relief she (hypothetically) might seek would lie in a category other than the injunctive, declaratory, and damages remedies that are precluded under the TIA and principles of comity. The key question, as emphasized by the Magistrate Judge, is whether Plaintiff's claims, "in one way or another, seek to invalidate the tax foreclosure process," (*id.*), and Plaintiff has not suggested why the posited additional claims or remedies she might pursue would not implicate the state court foreclosure proceedings and judgment, just as her existing federal claims do. In addition, the Magistrate Judge and this Court can only conduct a jurisdictional inquiry as to the claims and pleas for relief actually asserted by Plaintiff in her complaint, and not as to claims or remedies she might identify in the future.

Next, Plaintiff invites the Court to look into the merits of the 2019 state court foreclosure proceedings and judgment, apparently contending that defects in this state court process somehow preclude the application of the TIA here. She evidently maintains, for instance, that any tax debts she owed on the subject property were extinguished through either the 2017 "hidden" foreclosure or as a result of her bankruptcy proceedings, so that the 2019 tax foreclosure proceedings were not based on any existing and valid tax obligation. (*See* Plaintiff's Objections at 39, 42.) Yet, as the Sixth Circuit recently reaffirmed, the bar imposed by the TIA is jurisdictional. *See Islamic*

*Center of Nashville v. Tennessee,* 872 F.3d 377, 386 (6th Cir. 2017); *see also Pegross,* 592 F. App'x at 384. Thus, where this statute applies — as the Magistrate Judge concluded it does here, and as the Court has now agreed — Plaintiff's federal constitutional claims (and statutory claims, if any) cannot be "considered on the merits" in this federal forum, and Plaintiff instead "was required under the TIA to bring them to the proper state court." *Islamic Center,* 872 F.3d at 386; *see also Pegross,* 592 F. App'x at 386 (explaining that once the district court in that case determined that the plaintiff's claims might implicate the TIA, a "more searching jurisdictional inquiry should have followed," and vacating a summary judgment ruling in which the district court reached the merits of the plaintiff's claims). Any purported legal infirmities in the state court's 2019 rulings and judgment are simply not material to this Court's threshold jurisdictional inquiry under the TIA.

      Finally, while the Court has attempted, where possible, to forge a link between each of Plaintiff's objections and pertinent rulings in the R & R, a number of Plaintiff's objections evade any such effort. In objection number 18, for example, Plaintiff complains that an individual referenced in her complaint, Felton Adams, has been erroneously characterized as an "employee" rather than a "self-employed realtor." (Plaintiff's Objections at 34.) Yet, she does not specify where in the R & R this purportedly erroneous statement appears nor, more importantly, how this alleged misstatement has any possible bearing on the Magistrate Judge's rulings. Likewise, Plaintiff states in objection number 19 that "Defendant Patel being listed twice in the

same sentence is redundant," (*id.*), but she again fails to identify either the source or the significance of this alleged error.

As for a number of other objections that the Court has not expressly addressed in this order — including objections 2, 5, 6, 13, 14, 17, 20, 21, 23, 24, 25, 27, 29, 32, 33, and 34 — although the Court recognizes that the objections of a *pro se* plaintiff "should be liberally construed," the objections nonetheless "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Hanwha L&C Monroe Plant,* No. 15-12500, 2017 WL 1173768, at *1 (E.D. Mich. March 30, 2017) (internal quotation marks and citations omitted). Despite the Court's best efforts, it is unable to determine how these remaining objections have any relevance to either the Court's review of the R & R or the ultimate disposition of Plaintiff's claims in this suit.

### IV. CONCLUSION

The Court has reviewed *de novo* the entire record and the pleadings, giving particular attention to those portions of the record relevant to Plaintiff's objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). For the reasons stated above, the Court **OVERRULES** Plaintiff's January 27, 2020 objections (Dkt. 87), and **ADOPTS** the Magistrate Judge's January 9, 2020 report and recommendation (Dkt. 86) in its entirety. In accordance with the rulings in the R & R, the Court (i) **GRANTS** Defendant Angerer's motion to set aside the clerk's entry of her default (Dkt. 45), (ii) **DENIES** Plaintiff's motions for entry of defaults or default judgments against Defendants Angerer and the City of Hamtramck (Dkts. 41, 42, and 43); (iii) **GRANTS IN PART** Defendants' motions to dismiss Plaintiff's complaint (Dkts. 11, 12, 14, and 38), to the extent that these motions seek the dismissal of Plaintiff's federal claims for lack of subject matter jurisdiction or request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims; (iv) **DENIES** Plaintiff's motions for injunctive relief (Dkts. 5 and 62), in light of the Court's disposition of Plaintiff's claims on jurisdictional grounds, and (v) **DENIES AS MOOT** the remaining non-dispositive motions filed by Plaintiff before the R & R was issued (Dkts. 17, 68, 70, 74, 76, 77, 81, and 82). Finally, the Court **DENIES AS MOOT** Plaintiff's two most recent motions (Dkts. 91 and 95), where

the issues raised in these motions do not affect the Court's review of the R & R or the disposition of this suit.

**IT IS SO ORDERED.**

Date: June 29, 2020      s/Marianne O. BAttani
                         MARIANNE O. BATTANI
                         UNITED STATES DISTRICT JUDGE